RECOVERY, The (PRAY v.). See Case No. 11,379.

RECTIFYING ESTABLISHMENT (UNITED STATES v.). See Case No. 16,131.

RECTOR (GREENWOOD v.). See Case No. 5,792.

RECTOR (UNITED STATES v.). See Case No. 16,132.

## Case No. 11,626.

RED BANK CO. v. The JOHN W. GANDY.

TOWNSEND v. The EAGLE.

[7 Am. Law Reg. 606; 41 Hunt, Mer. Mag. 577; 1 Phila. 149; 8 Leg. Int. 26; 8 Pa. Law J. Rep. 482.]

District Court, E. D. Pennsylvania. Feb. 14, 1859.

COLLISION — STEAM AND SAIL—RIGHT OF WAY—FORE-REACHING.

1. The rule of navigation is emphatically settled that a vessel with the wind free must give way to one close-hauled; and a steamboat having the control of her own movements by means of her motive power, is always treated as a vessel with the wind free.

2. The manœuvre of fore-reaching, even in a harbor, is not objectionable, unless there be some reason to apprehend a collision by reason of making it.

In admiralty.

B. Gerhard, for the Eagle.

G. M. Wharton, for the Gandy.

KANE, District Judge. These cases have their origin in a collision, which took place on the 20th of June last, between the John W. Gandy, a coasting schooner, and the Eagle, a small steamer, that plies between Red Bank, on the New Jersey side of the Delaware, and Arch street wharf, stopping at South street wharf on the way. The schooner was working down the river opposite the city, heavily laden with coal,—the tide in her favor, and the wind from the south or southwest. She had stretched across towards the foot of Chestnut street, close behind another schooner, and this vessel hav-

ing just gone about, the Gaudy was in the act of doing the same, when she encountered the steamer. The Eagle had left South street wharf for Arch street, and was keeping in as close to the town as she could, to escape the force of the tide, when perceiving the schooner approaching, and at a very short distance from her, she headed in still farther to avoid her, and reversing her engine for one or two revolutions so as to arrest her course; but she did not back until the collision had taken place.

The judge then recapitulated the questions raised upon the argument, and the allegations and proofs of the parties, respectively, and proceeded thus:

The nautical gentlemen who did me the kindness to hear the evidence with me, are of opinion that the conduct of the schooner was not at variance with the usages of navigation, and that the steamer ought to have prevented the collision. I think they agree with me upon all the points which were made between the parties:

1. The wind was light, according to some of the witnesses, baffling, and its direction somewhat off the town, or so nearly parallel with the shore as to be affected, close on this side of the river, by the tall buildings on the wharves. A vessel, under these circumstances, approaching her ground for tacking, especially at the moment of passing under the lee of another vessel that tacked just before her, might lose the wind from her forward sails, so as to appear to others about to luff, when she was not. This may perhaps, reconcile the conflicting testimony on the first point.

2. The position and character of the injuries sustained by the two vessels,—the steamer having her upper works torn away on the starboard quarter, and the schooner being damaged on the starboard of her stem,—proves conclusively, that the schooner had gone about, so far as to be heading down the river, when the collision took place.

3. The manoeuvre of fore-reaching.—making a wide sweep in turning, so as to gain headway from the impetus she had acquired, instead of turning short,—is not objectionable, unless there is some reason to apprehend collision in consequence; and it is plain, as the schooner had gone about, that she would have nothing to fear on that score, if the steamer had been out of the way. And

4. The steamer ought not to have been there. The rule of navigation required her, as a vessel going free, to give way to the schooner, which was going close hauled; and it was her own choice which, with the open river at her side, and perfect control over her movements, had so placed her near the city shore, that she was unable to give way to vessels working down.

The occasion is, perhaps, a fitting one to renew the admonition to our steamers, that however important it may be to them, and convenient to the public, that they should keep up their speed, the law finds, in this consideration, no excuse for a collision whatever. They are, in this respect, on the same footing with the mail-coach, bound it may be by contract with the government, to make quick time, but not permitted on that account to infringe any of the rules of the road. It is the duty of every vessel to do all in her power to escape collision with another, and occurs very rarely indeed, in which the power of a steamer, properly fitted and managed, is not adequate to prevent her encountering a sailing vessel. She is regarded in the regulations of the Trinity House, which have been adopted in this court, as a vessel with the wind free; but she is more than this. The force which moves her is governed by her own will. She determines for herself what shall be its direction and intensity at the moment; and she is at rest when the engineer commands. There is no hardship for her therefore, in the rule that requires her to give way to a sailing vessel, and the safety of navigation on our river, makes it a duty of this court to enforce it rigidly.

In the case before us, the libel against the John W. Gandy must be dismissed, with costs; and a decree must be entered against the steamer Eagle for the amount of damages sustained by the other vessel in the encounter, also with costs.

Decree accordingly, and reference to Mr. Commissioner Heazlitt, to assess the damages.